IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:12-CV-762-FL

| | |
|---|---|
| MCKINLEY WILSON, ) | |
| ) | |
| Plaintiff/Claimant, ) | |
| ) | |
| ) | **MEMORANDUM AND** |
| v. ) | **RECOMMENDATION** |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings [DE-19, DE-24] pursuant to Fed. R. Civ. P. 12(c).[1] Claimant McKinley Wilson ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of his applications for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") payments. The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, this court recommends denying Claimant's Motion for Judgment on the Pleadings, granting Defendant's Motion for Judgment on the Pleadings and upholding the final decision of the Commissioner.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability, DIB and SSI on June 25, 2009, alleging disability beginning May 6, 2009. (R. 27). Both claims were denied initially and

---

[1] Defendant's original motion was submitted on May 22, 2013. [DE-21]. Defendant submitted a Corrected Motion for Judgment on the Pleadings on November 13, 2013. [DE-24].

upon reconsideration. *Id.* A video hearing before the Administrative Law Judge ("ALJ") was held on February 2, 2011, at which Claimant was represented by counsel and a vocational expert ("VE") appeared and testified. *Id.* On February 23, 2011, the ALJ issued a decision denying Claimant's request for benefits. (R. 24-35). On August 3, 2012, the Appeals Council denied Claimant's request for review. (R. 6-8). Claimant then filed a complaint in this court seeking review of the now final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in

2

crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520, 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c) and 416.920a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(3), 416.920a(e)(3).

In this case, Claimant alleges the following errors by the ALJ: (1) improper assessment of Claimant's credibility resulting in a defective RFC and hypothetical question and (2) failure to re-

3

contact Claimant's treating physician. Pl.'s Mem. [DE-20] at 2.

## IV. FACTUAL HISTORY

### I. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 29). Next, the ALJ determined Claimant had the following severe impairments: insulin-diabetes mellitus type I, hypertension, and fluid of the left knee with complaints of pain. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform medium work[2] with occasional climbing, no balancing, no driving an automobile and avoiding even moderate exposure to hazards. (R. 30). In making this assessment, the ALJ found Claimant's statements about his limitations not fully credible. (R. 31-33). At step four, the ALJ concluded Claimant had the RFC to perform the requirements of his past relevant work as a packer and warehouse worker. (R. 33). The ALJ alternatively made a step five finding that, upon considering Claimant's age, education, work experience and RFC, Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 34).

### II. Claimant's Testimony at the Administrative Hearing

At the time of Claimant's administrative hearing, Claimant was 51 years old and

---

[2] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying objects weighing up to 25 pounds. If someone can do medium work, he can also do sedentary and light work. 20 C.F.R. §§ 404.1567(c), 416.967(c).

4

unemployed. (R. 40, 45). Claimant attained a tenth grade education. (R. 41). Claimant was last employed with Double J Enterprise, a tile company, for approximately a year and a half ending in 2009, where his duties included laying tile floors. (R. 42). Claimant was laid-off from his job with Double J Enterprise and collected unemployment benefits for a period thereafter. (R. 42-43). Claimant's past work experience also includes working in product distribution as an order filler and truck packer or unloader, along with work as a brick mason assistant or laborer and seasonal employment in the tobacco industry. (R. 43-44, 54).

Claimant explained numerous medical conditions support his disability claim and his inability to work full-time. These medical conditions include diabetes, high blood pressure, and left knee pain. Claimant testified he checks his blood sugar daily which routinely stays at 200 or above. (R. 45). Claimant currently takes insulin for his diabetes, but has not noticed improvement in his blood sugar levels. When Claimant was first diagnosed in 1999, he was given insulin, but then placed on pills for a period of time before being placed back on insulin. (R. 46). Claimant testified that his diabetes make it difficult for him to stand for a long period of time, usually not more than one hour, and that he stays dizzy all the time. (R. 46-47, 50). When Claimant stands for a long period of time, he experiences weakness and dizziness requiring him to sit for fifteen to twenty minutes before standing again. (R. 56). Additionally, Claimant's whole body aches constantly and he does not feel well most of the time. (R. 47). Claimant has used a cane for approximately one year to help maintain his balance when standing. (R. 57). Claimant also has high blood pressure and takes medication for treatment. (R. 48). Claimant testified he has been on the same medication for over one year and checks his blood pressure periodically at stores with free screening machines. (R. 48-49). Claimant testified he sweats a lot and feels bad as a result of his high blood pressure. (R.

5

49).

Claimant testified that he is unable to work due to pain associated with his left knee. Claimant testified that his knee began giving him difficulty when doing tile work kneeling on concrete floors. (R. 47). Claimant had to have fluid build-up pumped from his knee and he still experiences pain in his left knee "off and on now" even though the fluid is gone. (R. 48). Claimant primarily experiences pain in his left knee when he stands up and does not have to stand for long before the pain begins. *Id.* Claimant testified that when he sits down the pain goes away. *Id.*

Claimant does not have difficulty sitting and can sit for up to an hour or more before he must stand to move around. (R. 49-50). Claimant is unable to lift most things and if he tries to lift something too heavy his back starts to hurt and he is unable to pick things up. (R. 50). In a typical day, Claimant begins by checking his blood sugar and administering his insulin before eating breakfast. (R. 50). Claimant testified he often sits down to "get [himself] together" because it is difficult to move quickly in the morning. *Id.* Claimant lives with his mother who does the laundry because he is too weak, but Claimant is able to make his bed. (R. 52). Claimant, by his own choice, has not driven since February 2010 and is never gone from the house for long periods of time. (R. 41, 51-52). Claimant's brother and sister take care of his shopping and errands for him. (R. 51). Claimant's brother and sister drive him to church services on Sunday and Wednesday or to visit his great aunt and other relatives. While at home, Claimant listens to music and watches TV, but does not feel able to do anything else. (R. 51).

### III. Vocational Expert's Testimony at the Administrative Hearing

Ann Neulicht testified as a VE at the administrative hearing. (R. 58). After the VE's testimony regarding Claimant's past work experience (R. 59), the ALJ asked the VE to assume a

6

hypothetical individual of the same age, education and prior work experience as Claimant and posed a series of hypothetical questions. First, the ALJ asked whether the individual could perform Claimant's past relevant work assuming the individual has the physical capacity to perform medium work consisting of occasional lifting of 50 pounds and frequent lifting of 25 pounds, with occasional climbing and balancing and no concentrated exposure to hazards. (R. 59-60). The VE responded that the hypothetical individual could perform past work as a warehouse worker (DOT# 922.687-058) and packer (DOT# 920.687-134). (R. 60). Next, the ALJ asked whether a hypothetical individual with the additional restriction of moderate exposure to hazards could perform the same past work previously identified in the prior hypothetical and the VE responded in the affirmative. (R. 60). The ALJ asked if any of the jobs require driving an automobile to which the VE responded in the negative. *Id.* The ALJ additionally asked if the restriction of no balancing would impact the VE's response to which she responded that the packer and warehouse worker positions do not require balancing beyond the obvious walking and lifting movements required. *Id.* The VE also testified that the position of kitchen helper (DOT# 318.687-010), hospital cleaner (DOT# 323.687-010) and dining room attendant (DOT# 311.677-018) would be available for this hypothetical individual. (R. 60-61).

Claimant's attorney next questioned the vocational expert. Counsel first added the additional limitation of no standing or walking for more than one hour without a break and asked whether the hypothetical individual could still perform any of the jobs listed. (R. 61). The VE responded that the hypothetical individual could not perform the listed jobs, but could perform other jobs not in the medium exertional level. *Id.* Counsel next asked whether use of a cane would impact the hypothetical individual's ability to perform the listed jobs and the VE testified the individual could

7

not perform the listed jobs with a cane, but could perform work not in the medium exertional category. (R. 63).

## V. DISCUSSION

### I. The ALJ's Evaluation of Claimant's Credibility and Evidence of Dizziness

Claimant contends the ALJ erred by failing to take account of Claimant's dizziness in his RFC determination and hypothetical questions to the VE. Pl.'s Mem. at 2-5. Specifically, Claimant contends the ALJ failed to consider Claimant's "constant dizziness and its effects, *i.e.,* his need for a cane, inability to stand for more than an hour, etc." *Id.* at 3. The court construes Claimant's argument to be that the ALJ improperly evaluated Claimant's credibility which resulted in an inaccurate RFC. This court disagrees.

It is within the province of the ALJ to determine a claimant's credibility. *See Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) ("Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight."). Federal regulations 20 C.F.R. §§ 404.1529(a) and 416.929(a) provide the authoritative standard for the evaluation of subjective complaints of pain and symptomology, whereby "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *See Craig*, 76 F.3d at 593-94. First, as an objective matter, the ALJ must determine whether Claimant has a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Id.*; *see also* SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996). If this threshold question is satisfied, then the ALJ evaluates the actual intensity and persistence of the pain or other symptoms, and the extent to which each affects a claimant's ability to work. *See Craig*, 76 F.3d at 595. The step two inquiry considers "all available evidence,"

including objective medical evidence (i.e., medical signs and laboratory findings), medical history, a claimant's daily activities, the location, duration, frequency and intensity of symptoms, precipitating and aggravating factors, type, dosage, effectiveness and adverse side effects of any pain medication, treatment, other than medication, for relief of pain or other symptoms and functional restrictions. *Id.*; *see also* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 96-7p, 1996 WL 374186, at *3. The ALJ may not discredit a claimant solely because his subjective complaints are not substantiated by objective medical evidence. *See Craig*, 76 F.3d at 595-96. However, neither is the ALJ obligated to accept the claimant's statements at face value; rather, the ALJ "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." SSR 96-7p, 1996 WL 374186, at *3. In addition to the objective medical evidence, the ALJ's evaluation of a claimant's credibility must include the following factors:

1. effect of symptoms on claimant's daily activities
2. location, duration, frequency and intensity of the symptom(s)
3. factors that precipitate or aggravate claimant's symptoms
4. type, dosage, effectiveness and side effects of medication taken to alleviate the symptom(s)
5. non-medical treatment received for relief of the symptom(s)
6. any non-treatment measures used to relieve the symptom(s)
7. other factors concerning functional limitations and restrictions due to the symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 96-7p, 1996 WL 374186, at *3.

Here, the ALJ found that Claimant had medically determinable impairments reasonably capable of causing his alleged symptoms, but concluded Claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms were not fully credible. (R. 31). After reviewing the ALJ's decision, the court finds the ALJ made the necessary findings in support of his credibility determination. *See Shively*, 739 F.2d at 989 (an ALJ's observations regarding credibility

9

should be given great weight). In reaching his conclusion, the ALJ thoroughly summarized Claimant's medical records relating to diabetes, hypertension and knee pain. (R. 31-33). Specifically, the ALJ cited medical records on numerous occasions which referred to or made a notation concerning Claimant's diabetes and resulting uncontrolled blood sugar. (R. 31-33); *see* (R. 282) (diagnosed with diabetes); (R. 288-89) (history of poorly controlled diabetes); (R. 294) (diagnosed with uncontrolled type II diabetes); (R. 341) (history of uncontrolled diabetes); (R. 345) (diagnosed with type I insulin-dependent diabetes); (R. 354-55) (no control over fasting sugars and steroids not permitted because of uncontrolled diabetes). The ALJ noted Claimant's testimony that he went to the hospital several times when suffering from dizziness, that he did not drive because "he stayed dizzy all the time," and that he used a cane because standing made him dizzy. (R. 30-31). The ALJ also noted the statement by Claimant's attorney that Claimant was unable to stand for more than one hour due to his dizziness and knee difficulties. (R. 33). Finally, the ALJ gave significant weight to the two physical RFC assessments which opined Claimant was capable of performing medium work, yet included several limitations due to his poorly controlled blood sugar levels. *Id.* In his evaluation of Claimant's testimony and the objective medical evidence, the ALJ noted that Claimant's diabetes was treated with insulin and diet and the use of a cane was not prescribed by a physician. *Id.*

The ALJ properly evaluated Claimant's subjective accounts of dizziness with the objective medical evidence presented and did not err in finding that Claimant's statements were not entirely credible. Notably, the ALJ thoroughly cited the medical evidence which at no point documented that Claimant's dizziness created an inability to stand or necessitated the use of a cane. Claimant contends that the ALJ's statement that the cane was not "prescribed by a physician" is incorrect and

10

improper. Pl.'s Mem. at 4-5. However, the record reflects that no physician prescribed Claimant a cane. Claimant was prescribed crutches while being treated for a knee lesion to avoid putting pressure on the knee, but the record no where indicates that Claimant otherwise required a cane for mobility purposes. *See Timmons v. Colvin*, No. 3:12-CV-609, 2013 WL 4775131, at *8 (W.D.N.C. Sept. 5, 2013) (finding the ALJ did not err in determining claimant could perform light work when there was no evidence supporting the need for a cane and citing SSR 96-9 for the proposition that the cane is not medically required).

Additionally, Claimant contends that the ALJ's statement that Claimant's diabetes was "treated" versus controlled "glossed over" the fact that Claimant's dizziness was caused "not so much by his hypertension as by his diabetes." Pl.'s Mem. at 3-4. A review of the ALJ's opinion clearly indicates that the ALJ acknowledged that Claimant's diabetes was not controlled and his ultimate RFC determination clearly reflects due consideration being given to the symptoms stemming from Claimant's uncontrolled diabetes. His decision that Claimant should only engage in occasional climbing, perform no balancing, avoid even moderate exposure to hazards, and not drive an automobile reflects the weight and credibility he afforded Claimant's subjective statements about dizziness despite the limited evidence of record documenting said dizziness and its effects. In short, the ALJ comported fully with the credibility evaluation prescribed by Social Security Ruling 96-7p by making findings, supported by reasons, with respect to Claimant's alleged symptoms, the medical record and Claimant's own testimony. *See Mickles v. Shalala*, 29 F.3d 918, 929 (4th Cir. 1994) ("Subject only to the substantial evidence requirement, it is the province of the [ALJ], and not the courts, to make credibility determinations."). For the foregoing reasons, Claimant's argument as to this issue is without merit and the ALJ did not err in failing to include the additional limitations

11

asserted by Claimant in the RFC.

Claimant also contends that the ALJ erred by failing to include in his hypothetical to the VE Claimant's dizziness and resulting inability to balance and stand thereby necessitating the use of a cane. Pl.'s Mem. at 2. Claimant's contention is without merit. To be helpful, the vocational expert's opinion must be "in response to proper hypothetical questions which fairly set out all of [a] claimant's impairments." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). A hypothetical question is proper if it adequately reflects a claimant's RFC for which the ALJ had sufficient evidence. *Johnson v. Barnhart*, 434 F.3d 650, 659 (4th Cir. 2005); *Baker v. Astrue*, No. SAG-10-145, 2012 WL 12751, at *4 (D. Md. Jan. 3, 2012) (rejecting claimant's objections to the ALJ's hypothetical to the VE where "the hypothetical presented . . . was supported by substantial evidence and adequately included all the limitations that were deemed credible by the ALJ"). The VE must accept as true the RFC as determined by the ALJ. *Hines v. Barnhart*, 453 F.3d 559, 566 n.5 (4th Cir. 2006).

In this case, the ALJ's hypothetical presented to the VE adequately reflected Claimant's RFC as determined by the ALJ. The ALJ gradually added limitations to his original hypothetical until it posited an individual of the same age, education, and work background as Claimant who could perform medium work with occasional climbing, no balancing and should avoid moderate exposure to hazards and driving. (R. 59-60). Based on this hypothetical, the VE testified Claimant could perform past work as a packer and warehouse worker. (R. 60). As discussed, the ALJ made a proper credibility determination and did not err in failing to include these limitations in his RFC determination. Therefore, the limitations which Claimant cites were properly excluded from the hypothetical and Claimant's argument fails.

12

## II. The ALJ Did Not Have a Duty to Re-contact Claimant's Treating Physician.

Claimant contends the ALJ erred in failing to re-contact his treating physician at Vance Family Medicine for clarification on the issue of use of or prescription of a cane. Pl.'s Mem. at 5-6. However, as this court has recognized, "[t]he regulations clearly state that an ALJ's duty to recontact a treating source arises only when the evidence as a whole is inadequate to determine the issue of disability." *Parker v. Astrue*, 792 F. Supp. 2d 886, 895 (E.D.N.C. 2011) (citing 20 C.F.R. §§ 404.1512(e), 404.1527(c)(2), 416.912(e), 416.927(c)(2)); *see also Hawley v. Colvin*, No. 5:12-CV-260-FL, 2013 WL 6184954, at *6 (E.D.N.C. Nov. 25, 2013) (recognizing that "*Parker* accurately stated the standard for when the ALJ must recontact a treating physician"). The court recognizes that the regulations since the time of the ALJ's decision in 2011 have undergone changes to include different language and certain regulations have been recodified in similar form elsewhere. *See* 20 C.F.R. §§ 404.1512(e), 404.1527(c)(2), 404.1520b, 416.912(e), 416.927(c)(2), 416.920b. However, the regulations in past and current form continue to support the standard in *Parker*.

Applying this standard to the instant case, the ALJ did not have a duty to re-contact Claimant's treating physicians. The evidence in the record was sufficient for the ALJ to make a disability determination and the record does not disclose an ambiguity concerning Claimant's use of or need for a cane because there is an absence of any such record. Claimant's reliance on the medical records prescribing crutches (R. 357, 359, 361) is misplaced because the crutches were prescribed when Claimant's left knee was being treated for a lesion. Moreover, there are no subsequent records indicating the use of or need for a device to assist Claimant's mobility. There is no indication that the ALJ failed to acquire any of the records from Vance Family Medicine. To the contrary, the medical record was developed and spanned several years of treatment and

13

examination. Accordingly, the record was sufficient for the ALJ to make a disability determination and there was no need for the ALJ to re-contact physicians at Vance Family Medicine.

## CONCLUSION

For the reasons stated above, this court RECOMMENDS Claimant's Motion for Judgment on the Pleadings [DE-19] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-24] be GRANTED and the final decision of the Commissioner be UPHELD.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

Submitted, this the 19th day of December, 2013.

Robert B. Jones, Jr.
United States Magistrate Judge